NEW JERSEY DIVISION OF ALCOHOLIC BEVERAGE CONTROL, RESPONDENT, v. H & H WINE AND SPIRIT SHOP, INC., T/A TOWNE LIQUORS, APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 10, 1987—Decided April 13, 1987.

Before Judges ANTELL, BRODY and LONG.

*Lepis, Lepis & Curley,* attorneys for appellant (*James G. Lepis* on the brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent (*Michael R. Clancy,* Deputy Attorney General, of counsel; *Nancy Mahony,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

In this disciplinary proceeding the Director of the Division of Alcoholic Beverage Control found three violations for which he suspended the plenary retail distribution license issued to H & H Wine and Spirit Shop, Inc. (H & H) a total of 17 days. H & H appeals a 15–day suspension imposed for the sale or delivery of beer to a person under the legal age to purchase and consume alcoholic beverages.[1] The Director rejected the initial decision of an administrative law judge (ALJ) who had dismissed the charge. H & H challenges the Director's interpretation of the regulation and his findings. We affirm the suspension.

Two witnesses testified at the hearing, a state police inspector and the 22–year-old clerk who allegedly made the sale. The inspector was in his car outside the H & H store when he noticed two customers enter. He left his car and stood at the store window in order to observe more closely one of the men who appeared to be under age.

The inspector testified that he saw the young man remove an 8–pack of beer from the cooler in the back of the store, pay the clerk at the counter and carry the beer out of the store. The

---

[1] We will use "of age" and "under age" to distinguish between persons who may and may not lawfully purchase and consume alcoholic beverages. Older cases cited in this opinion make the distinction by using "adult" and "minor" because the legal age to purchase then coincided with the age of majority. Persons must now be 21 years of age and older to purchase and consume alcoholic beverages. *N.J.S.A.* 9:17B–1.

two men did not stay together in the store. The young man was alone at the counter when he paid for the beer.

The clerk told a different story. He testified that he first saw the two men when they both appeared at the counter. The older man placed the beer on the counter and "[l]aid down two dollars and sixty cents on the counter," the exact price of the beer. The older man then told the younger man that he needed change to purchase cigarettes from a machine in the store whereupon the younger man handed the clerk a dollar bill and asked for change. The clerk gave the change to the younger man who immediately handed it to the older man. Both men then left the counter, the younger man carrying the beer. The clerk thereupon turned to his next customer.

The inspector approached the men after they left the store. The younger man identified himself as Harry Bowker and admitted that he was only 19 years old.

H & H was charged with violating the following portion of *N.J.A.C.* 13:2–23.1(a) (the regulation):

> No licensee shall sell, serve or deliver or allow, permit or suffer the sale, service or delivery of any alcoholic beverage, directly or indirectly, to any person under the legal age to purchase or consume alcoholic beverages....

Although he said at the close of the hearing that he would decide whether under the regulation the clerk "delivered" the beer or "suffered delivery" of the beer to Bowker when Bowker admittedly picked up the 8–pack from the counter and left the store, the ALJ made no reference to that legal question in his decision. He found that the inspector, unable to hear what was being said in the store, mistakenly believed that the money Bowker gave the clerk for change was payment for the beer. The ALJ credited the clerk's testimony and dismissed the charge.

The Director rejected the ALJ's decision on the grounds that as a matter of law the clerk "delivered" the beer to Bowker

when Bowker picked it up and carried it out of the store and that as a matter of fact the clerk had sold the beer to Bowker. We agree with the Director's view of the law and defer to his finding of fact.

■ The regulatory prohibitions are disjunctive: a licensee may not sell, serve or deliver or suffer the sale, service or delivery of alcoholic beverages to a person under age. Alcoholic beverages may be delivered to one person though sold to another. The commonly understood meaning of "deliver" is "yield possession or control of; ... hand over." *Webster's Third New International Dictionary* 597 (1971). Even if the clerk did not literally hand over the beer to Bowker, he was aware that Bowker took possession of the beer as soon as it was paid for. The regulation prohibits delivery "directly or indirectly."

■ Moreover, the regulation expressly provides that a licensee may not "permit or suffer" delivery to a person under age. In *Essex Holding Corp. v. Hock*, 136 *N.J.L.* 28 (Sup.Ct.1947), minors in the company of adults were surreptitiously drinking beer on a licensed premises. In discussing the import of the word "suffer" in a regulation prohibiting a licensee from "allowing, permitting, and suffering" consumption by a minor of alcoholic beverages on the licensed premises the court said:

the word "suffer" ... imposes responsibility on a licensee, regardless of knowledge, where there is a failure to prevent the prohibited conduct by those occupying the premises with his authority. [*Id.* at 31]

The regulation before us makes no distinction between the responsibility of a retail consumption licensee and the responsibility of a retail distribution licensee to prevent the prohibited conduct. *N.J.S.A.* 33:1–81 places a corresponding responsibility on under-age persons by making it a disorderly persons offense

for a person under the legal age for purchasing alcoholic beverages to enter any premises licensed for the retail sale of alcoholic beverages for the purpose

of purchasing, or having served or delivered to him or her, any alcoholic beverage....

H & H acknowledges that *Essex Holding* properly advances the State's legitimate interest in preventing young people from consuming alcoholic beverages by requiring a retail consumption licensee to be responsible that open alcoholic beverages purchased by a person of age not be delivered on the licensed premises to a companion under age. It argues, however, that if the regulation is interpreted to require a retail distribution licensee to be responsible that packaged alcoholic beverages purchased by a person of age not be delivered on the licensed premises to a companion who is under age the regulation would unconstitutionally exceed the State's legitimate interest in preventing young people from consuming alcoholic beverages. We disagree.

Where government undertakes to safeguard the health, safety and welfare of the people through the adoption of remedial measures, "courts in turn are required to respect and sustain such efforts as an exercise of the legislative police power so long as they are not clearly arbitrary and are reasonably related to the objective sought to be attained." *Jones v. Haridor Realty Corp.*, 37 *N.J.* 384, 393 (1962). Strict regulation of the distribution of alcoholic beverages, particularly to young people, has repeatedly and emphatically been approved by our courts:

> Although statutes penal in character must be construed strictly, the injunction of the legislature as hereabove indicated enjoins us to the contrary in reference to liquor traffic. *Kravis v. Hock*, 135 *N.J.L.* 259. Our courts have held that it "is a subject by itself, to the treatment of which all the analogies of the law, appropriate to other topics, cannot be applied." *Paul v. Gloucester County*, 50 *Id.* 585; *Hudson Bergen County Retail Liquor Stores Association v. Driscoll, Commissioner, et al.*, 135 *Id.* 502. Or as was said in *Crowley v. Christensen*, 137 *U.S.* 86 [11 *S.Ct.* 13]; 34 *L.Ed.* 620:
>
>> "As it is a business attended with danger to the community it may * * * be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils."
>
> The prevention of the sale to, or the consumption by, minors of liquor upon licensed premises is of the utmost importance. Its purpose is to protect our

youth and thereby make more secure the foundation of society. [*Essex Holding*, 136 *N.J.L.* at 31]

*See Rappaport v. Nichols*, 31 *N.J.* 188, 201 (1958).

█ The State's interest in protecting young people against the dangers resulting from consuming alcoholic beverages is advanced by prohibiting a retail distribution licensee from selling or delivering packaged alcoholic beverages to a person under age. As the conflicting evidence in this case demonstrates, unless the State may prohibit a retail distribution licensee from delivering or suffering delivery of packaged alcoholic beverages to a person under age who is accompanied on the licensed premises by a person of age, violators may falsely claim that a sale was made to the person of age when in fact it was made to the person under age.

Even though in a particular case the regulation may prevent a licensee from delivering packaged alcoholic beverages to a person under age who has no intention of consuming them, a licensee has not thereby been denied due process. The absolute prohibition against delivery to a person under age is reasonably necessary to enforce the State's legitimate interest in preventing under-age persons from buying and consuming alcoholic beverages. For regulatory purposes a classification may be based upon "practical exigencies, including administrative convenience and expense." *N.J. Restaurant Assn. v. Holderman*, 24 *N.J.* 295, 300 (1957).

█ We are also satisfied that the Director's finding that in fact the clerk sold the beer to Bowker is supported in the record and that the Director gave attentive consideration to the ALJ's findings although he rejected his initial decision. *DeVitis v. N.J. Racing Com'n.*, 202 *N.J.Super.* 484, 492–493 (App.Div. 1985), certif. den. 102 *N.J.* 337 (1985).

H & H's remaining points are clearly without merit. *R.* 2:11–3(e)(1)(E).

Affirmed.